# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

CASSANDRA MIZE                                                              PLAINTIFF

v.                            NO. 3:14-cv-00231 PSH

CAROLYN W. COLVIN, Acting Commissioner                      DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Cassandra Mize ("Mize") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Mize maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers two reasons why.[1] Mize first maintains that her residual functional capacity was not properly assessed. She so maintains because the ALJ failed to explain the impact Mize's obesity has on her ability to perform sedentary work and because there is no evidence to support his finding that she can sit for up to six hours in an eight hour workday.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. <u>See</u> <u>Wildman v. Astrue</u>, 596 F.3d 959 (8th Cir. 2010).

The medical evidence relevant to Mize's obesity reflects that she is sixty-one inches tall and has weighed as much as 234 pounds. The question for the ALJ was not whether Mize is obese but rather the extent to which her excess weight impacts her ability to perform work-related activities. The medical evidence on that question is minimal. Save notations in the record that she is obese or "well built and nourished," <u>see</u> Transcript at 339, 350, 363, there is little medical evidence her excess weight adversely impacts the most she can do or adversely impacts her other impairments. Instead, it appears that her work-related limitations are caused by her back impairment. For instance, she testified during the administrative hearing that her difficulties sitting and standing are caused by her back and left hip problems. <u>See</u> Transcript at 52.

The non-medical evidence is also minimal. Although Mize represents that her daily activities are limited, <u>see</u> Transcript at 63-64, 69-70, 221-226, it does not appear that the limitations of those activities are caused by her excess weight. Instead, the limitations appear to be caused by her other impairments. For instance, she reported during one medical examination that her back pain interferes with her ability to sleep, perform household chores, walk, exercise, and work. <u>See</u> Transcript at 13.

In short, Mize's excess weight undoubtedly causes some pain and exacerbates the pain caused by her other impairments, and the ALJ so found. There is no evidence, though, that her excess weight causes any work-related restrictions. The ALJ's consideration of her excess weight and its affect on her other impairments was not improper.

The medical evidence relevant to Mize's back impairment reflects that she began experiencing back problems in 2001. See Transcript at 292. The following year, she had a lumbar fusion at the L4-L5 and the L5-S1 levels. See Transcript at 13, 52-53, 292. She reported that the surgery only helped for "a while," see Transcript at 292, but the record reflects that she eventually returned to work and continued working until September of 2011, see Transcript at 52, 178.

In April of 2012, Dr. Ralph Joseph, M.D., ("Joseph") saw Mize for a consultative examination. See Transcript at 292-296. He noted, inter alia, her history of back problems and her representation that she needed to stay in a recliner. He observed that she had a normal range of motion in her extremities and in her cervical and lumbar spines and a normal gait and coordination. He observed, though, that muscle spasms were present in her lumbar spine, her straight-leg raising was positive on the right side at twenty-five degrees, and she could not squat/arise from a squatting position. Joseph diagnosed back pain with positive straight leg raising on the right and probable lumbar disc disease. Based on his evaluation, he opined, inter alia, that Mize had the following work-related limitations: she experiences pain after sitting more than fifteen minutes

-3-

as a result of her prior back surgery and a recurrence of her symptoms.

Joseph appears to have based his findings, in part, on an x-ray performed the same day he saw Mize. See Transcript at 302-303. The results of the x-ray revealed a "fusion of the disc spaces at L4-5 and L5-S1" and "slight scoliosis convex to the right in the mid lumbar levels." See Transcript at 302.

Beginning in October of 2012, Mize saw the medical professionals at ARCare on what appears to have been six separate occasions for her complaints of back, hip, and left leg pain. See Transcript 367-372 (10/27/2012), 360-366 (10/30/2012), 347-352 (11/09/2012), 353 (11/14/2012), 330-331 (04/24/2013), 23-24 (08/28/2013). At her November 9, 2012, visit, she complained that her pain had grown worse, causing her difficulties with her activities of daily living. For instance, she reported having difficulty "standing just to wash dishes ..." See Transcript at 349. At her August 28, 2013, visit, she complained that her pain prevented her from sleeping. The attending medical professional noted that Mize experienced pain with straight leg testing and was able to bend down but was "unable to stand back up without help due to pain." See Transcript at 24. Back pain was repeatedly assessed, and she was prescribed medication for her pain.

In November of 2012, an MRI was taken of Mize's lumbar spine at St. Bernards Medical Center. See Transcript at 327-328. Dr. Michael Smith, M.D., reviewed the results and found the following: 1) a "disc bulge to the right L3-L4 [with] mild narrowing [of the] right lateral recess, see Transcript at 327; 2) no severe stenosis; and 3) a normal post-

-4-

operative appearance at levels L4-L5 and L5-S1.

In July of 2014, Dr. Jeffrey Hall, M.D., ("Hall") saw Mize for her complaints of back pain. See Transcript at 13-14. She reported that her pain radiated from her lower back into her hips and occasionally into her left leg. She reported that the pain interfered with her activities of daily living, e.g., sleeping, doing house chores, walking, and exercising. Hall observed, inter alia, that Mize had a moderately limited range of motion in her lumbar spine, "moderate pain induced;" "musculature point tender over [the] SI joint, point tender over [the] spine;" and muscle spasms with mild guarding over the lumbar spine. See Transcript at 13. He diagnosed failed back syndrome in her lumbar spine and sacroiliac pain, prescribed medication, and counseled her regarding physical activity. At a later examination, he gave her a steroid injection. See Transcript at 8-11.

In August of 2014, a CT scan was performed of Mize's lumbar spine. See Transcript at 12. Dr. Jon Collier, M.D., reviewed the results and found the following: 1) a facet joint hypertrophy and mild annular disc bulge at L3/L4; 2) anterior fusion with hardware and spacing material at L4/L5, as well as facet joint hypertrophy; and 3) no spinal stenosis or disc herination.

With respect to the non-medical evidence, it reflects that Mize's daily activities are limited. See Transcript at 63-64, 69-70, 221-226. She testified during the administrative hearing that she does very little during the day, typically just relaxing in a recliner most of the day. See Transcript at 63-64. She nevertheless represented in her disability documents that she is capable of, inter alia, making supper, washing dishes

every other day, and doing laundry.

Mize testified to the duration, frequency, and intensity of her pain. She testified that she cannot sit "for very long at all" because of the pain she experiences in her back and left hip. See Transcript at 58. She was asked if she could sit for six hours in an eight hour workday, and she replied that she could not. See Transcript at 59. She testified that she has a "hard time" sitting for more than ten to fifteen minutes before having to "recline back in my chair." See Transcript at 59.

Mize also testified to her medication. She testified that she has taken medication for her back pain for several years, sometimes prescription medication and at other times over-the-counter medication. See Transcript at 53-55, 57, 66-67, 69. She testified that the medication provides only minimal relief. See Transcript at 53-54, 57.

The ALJ found at step two of the sequential evaluation process that Mize's severe impairments include obesity and "back pain with radiculopathy status post fusion at the L4-L5 and the L5-S1 levels." See Transcript at 31. He assessed her residual functional capacity and found that she is capable of performing a reduced range of sedentary work. As a part of that finding, he found that she could sit for up to six hours in an eight-hour workday. He also found that after she sat for more than one hour, "she would have the option to stand for at least ten minutes in her immediate area and would not interfere with the work process." See Transcript at 32. Additionally, he found the following: "[t]he fact that the claimant may have some level of pain associated with her back and her obesity was given due consideration ... in reaching the finding that [she] would be

limited to work at the sedentary physical exertion level." <u>See</u> Transcript at 38.

Substantial evidence on the record as a whole supports the ALJ's assessment of Mize's residual functional capacity. He adequately considered the medical evidence in making the assessment and could and did find that she has some pain as a result of her obesity and back impairment. He incorporated the limitations caused by that pain into the assessment and limited her to a reduced range of sedentary work. He could and did find, though, that her obesity and back impairment do not prevent her from sitting for up to six hours in an eight hour workday with an option to stand for at least ten minutes after each hour. In making that finding, he could evaluate the medical evidence as he did. For instance, Joseph's findings are not consistent with disabling pain, and Hall appears to have characterized Mize's pain as moderate. The ALJ's assessment is largely consistent with those findings.

Mize faults the ALJ for mis-handling part of Joseph's evaluation. Mize construes Joseph's evaluation to mean he limited Mize to sitting for no more than fifteen minutes at a time. It appears, though, that Mize mis-construes that part of Joseph's evaluation. Joseph simply observed that Mize has "pain on sitting more [than fifteen minutes]." <u>See</u> Transcript at 296. A fair construction of that phrase is not that she can only sit for fifteen minutes at a time; instead, a fair construction of the phrase is that she begins to experience some degree of pain when she sits longer than fifteen minutes at a time. The ALJ accorded that part of Joseph's evaluation some weight as the ALJ found that after Mize has sat for more than an hour, she would have the option to stand for at least

ten minutes. The Court finds that the ALJ could construe the phrase as he did.

The ALJ could also evaluate the non-medical evidence as he did. He considered it in accordance with the factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and could and did find that it did not fully support Mize's complaints of disabling pain.[2] He considered her representations regarding her limited daily activities but found that other matters made her representations less than fully credible.[3] He could and did note that she has only received minimal medical treatment, has taken medication for her pain only on an occasional basis, and has at times only taken over-the-counter medication for her pain. He could and did also note that she received unemployment compensation for a period of time after she stopped working in September of 2011, see Transcript at 37, 68-69, 71, and she continued looking for employment after September of 2011, see Transcript at 37, 71.

"The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." See Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). In this instance, the Court finds that Mize has not offered a sound reason for deviating from that rule. The ALJ's evaluation of Mize's complaints of pain is one of the

_____

[2]

As a part of assessing the claimant's residual functional capacity, the ALJ must evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by considering, "in addition to objective medical evidence, any evidence relating to: [the] claimant's daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

[3]

Although not specifically noted by the ALJ, it is at least worth observing that Mize represents she cannot sit for more than fifteen minutes but nevertheless sits in a recliner most of the day.

acceptable evaluations of the evidence.

Mize offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. She maintains that his hypothetical question failed to "accurately describe the severity of [her] obesity and resulting limitations." See Pleading 11 at 14.

Testimony from a vocational expert is substantial evidence on the record as a whole only when "the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." See Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997). Thus, the hypothetical question must include all those impairments that are substantially supported by the record as a whole. See Id.

The record reflects that a vocational expert testified during the administrative hearing. See Transcript at 72-77. After Mize's past work was outlined, the ALJ posed a series of hypothetical questions to the vocational expert, none of which included any mention of Mize's excess weight. The vocational expert testified that the hypothetical individual could perform Mize's past work as a secretary. The vocational expert also testified that there was other work the hypothetical individual could perform. The ALJ relied upon the vocational expert's answers and found at step four of the sequential evaluation process that Mize could return to her past work as a secretary. Alternatively, the ALJ proceeded to step five, again relied upon the vocational expert's testimony, and found that the hypothetical individual could perform other work, e.g., general office clerk, desk clerk, and cashier I. The ALJ therefore found that Mize was not disabled for

purposes of the Social Security Act.

Substantial evidence on the record as a whole supports the ALJ's hypothetical questions and his findings at steps four and five. The questions captured the concrete consequences of Mize's deficiencies. It is true that the questions did not mention her obesity, but the ALJ's failure to include any mention of it does not warrant a remand. Substantial evidence on the record as a whole establishes that her excess weight does not give rise to work-related limitations greater than that found by the ALJ, and substantial evidence on the record as a whole establishes that her excess weight does not adversely impact her other impairments.[4]

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Mize's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 15th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4]

Mize maintains that Morrison v. Apfel, 146 F.3d 625 (8th Cir. 1998), requires the ALJ to specifically include the claimant's obesity in formulating a hypothetical question. Her reliance on Morrison v. Apfel in this instance, though, is misplaced because there is no evidence her obesity was ever identified as a "major medical issue." See Burnett v. Colvin, 2014 WL 5795788 at 2 (E.D.Ark. 2014) (Kearney, J.).